IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DWIGHT E. LAMBERT,             )
                                         )
          Plaintiff,             )    TC-MD 250076N
                                         )
       v.                       )
                                         )
LINN COUNTY ASSESSOR,      )
                                         )
          Defendant.      )    **DECISION**

Plaintiff appealed the value of property identified as Account 39772 (subject property) for the 2024-25 tax year. A trial was held on June 25, 2025, in the courtroom of the Oregon Tax Court. Plaintiff appeared and testified on his own behalf. Lisa Vanderwood (Vanderwood), registered appraiser, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 to 2, and Defendant's Exhibits A to G were received without objection.

## I. STATEMENT OF FACTS

The subject property is a 42.5-acre parcel located in the exclusive farm use (EFU) zone with a single-family house constructed in 2021. (Ptf's Ex 1.1; Def's Ex F at 1.) 26.8 acres of the subject property is irrigated. (Def's Ex B.) Plaintiff leased approximately 30 acres of the subject property to a tenant farmer for $350 per acre. (*See* Def's Exs B, F.) The subject property was planted with corn as of June 2025. (Def's Ex E.) Plaintiff testified it had previously been used to grow squash and pumpkins.

A.    *Subject Property Land, Soil Classification*

Plaintiff contends that Defendant has misclassified the subject property soil and, as a result, overvalued it. The subject property's tax roll land value reflected 26.60 acres of class 2 soil, 10.54 acres of class 3 soil, and 4.40 acres of class 4 soil. (Def's Ex F at 1.) In Plaintiff's

DECISION TC-MD 250076N                                    1

opinion, the subject property is "an old river bed" with "primarily class 3-4 sand and rock with very little spotty top soil." (Ptf's Ex 1.1.) He testified that when you walk the subject property, you see rock and sand. The subject property is in a flood zone and typically floods every winter from November through February. A significant flood impacted the subject property in 2011, requiring Plaintiff to repair roads and irrigation systems. Plaintiff testified that he cannot grow high value crops like hazelnuts or fescue because of the flooding.

Vanderwood testified that Defendant relies on USDA Natural Resources Conservation Service (NRSC) maps to determine soil classes for all farm properties, including the subject property. (*See* Def's Ltr, June 6, 2025.) The NRSC map shows 3.9 acres of the subject property is class 4 soil and the balance is class 2 soil. (Def's Ex A at 1, 3.) Vanderwood testified that she and other appraisers from Defendant's office have visited the subject property numerous times and made a careful review, reducing the amount of class 2 soil assessed. She testified that Plaintiff's tenant farmer paid higher than typical rent for the subject property and was able to grow crops, indicating the soil was viable for farming.

Plaintiff testified that the NRSC maps used by Defendant are unreliable because they're based on satellite images. He testified that the tenant farmer paid a premium based on the subject's proximity to the farmer's cold storage facility. The tenant farmer is the only operator in the valley with that type of cold storage facility – a multi-million-dollar investment – so the average farmer could not afford it. Plaintiff testified that the corn planted at the subject property is slow-growing and often yields less than three ears per stalk. Plaintiff presented a letter from Wyatt Bose, a field scout for Wilbur Ellis, which states that he "rode the farmable boundary of [the subject property] using our company application that uses GPS on 5/5/2025. To the best of my knowledge the ground appeared rocky and sandy which could result in reduced yield for

certain crops." (Ptf's Ex 1.2.) The attached map shows 30.12 acres designated as "field." (Ptf's Ex 1.3.) Plaintiff testified that soil testing is cost-prohibitive and damages the land.

Plaintiff contends that the subject property land is worth no more than $1,000 per acre and alleged that he owns a parcel in Marion County assessed at $250 per acre. (*See* Ptf's Ex 1.1.) Vanderwood presented four comparable land sales ranging in size from 38.24 acres to 80.09 acres that sold for prices ranging from $8,399 to $11,185 per acre. (*See* Def's Ex D.) Three of the four sales were in the EFU zone and the fourth was described as "farm use unzoned." (*Id.*) Sale 1 had class 6 soil; sale 2 had a mix of class 2, 3, and 4 soils; sale 3 had class 4 and 6 soils; and sale 4 had class 2, 3, and 6 soils. (*Id.* at 1-2.) Vanderwood testified that even class 6 soil, which is inferior to the subject property, sold for well over $1,000 per acre.

B.     *Subject Property House*

Plaintiff paid $191,370 to HiLine Homes in September 2021 to construct the subject property house. (Ptf's Ex 2.0.) Vanderwood testified that the 2025 cost to construct a similar HiLine Home was $222,995. (*See* Def's Ex G at 1.) She noted that "Hiline Homes costs are not all inclusive * * * [s]ite prep, permits and other costs of construction are not included." (*Id.*) Plaintiff's permit cost $3,232 and typical site preparation costs range from $10,000 to $50,000. (*See id.*) Vanderwood valued the subject house as a class 3 dwelling reflecting "basic quality and construction." (Def's Ltr, June 6, 2025.) She calculated a replacement cost new of $275,551 based on the time-trended cost to construct the subject house. (*See* Def's Ex G at 1.)

Vanderwood testified that it was difficult to find comparable sales, but she identified three. (*See* Def's Ex G at 1, 3.) Sale 1 was 42.78 acres of mostly class 3 soil with a larger, but older home, that sold for $875,000 in May 2025. (*Id.* at 3.) Sale 2 was 40.13 acres with soil classes ranging from 3 to 5 and a "smaller older home of similar quality of construction" that

sold for $850,000 in October 2023.  (*Id.*)  Sale 3 was 52.69 acres with a woodlot, soil classes ranging from 3 to 4, and an older HiLine home that sold for $810,000 in November 2023.  (*Id.*)  Sale 1 and 3 were in the EFU zone and in farm deferral.  (*Id.* at 4-5.)  Sale 2 was in the EFU zone, with no deferral listed.  (*Id.* at 6.)  Plaintiff questioned the motivation of the buyers, speculating that they might be individuals looking for a rural home rather than farmers.

C.      *Tax Roll and Requested Values*

The subject property's 2024-25 tax roll real market value was $735,100 with $394,650 allocated to the land and $340,450 allocated to the improvements.  (Def's Ex F at 1.)  Of the total improvements value, $270,820 was allocated to the house, and the balance was allocated to various improvements that neither party discussed.[1]  (*See id.*)  Plaintiff requests a land value of $1,000 per acre – indicating a total land value of $42,500 – and an improvements value of $200,000 for the house.  (Ptf's Ex 1.1.)  He did not allege any value for other improvements. Defendant requests that the tax roll real market value be sustained.

## II.  ANALYSIS

The issue before the court is the subject property's 2024-25 real market value.  "Real market value" is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."  ORS 308.205(1).[2]  Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *."  ORS 308.205(2).  Three approaches to value must be considered but may not be applicable in every case: the cost approach; the sales comparison approach; and

---

[1] Specifically, an "MS Double wide," "Residential Other improvements," and two "GP Buildings."  (*Id.*)

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2023 edition.

the income approach. Oregon Administrative Rule (OAR) 150-308-0240(2)(a). The assessment date was January 1, 2024, for the 2024-25 tax year. ORS 308.007; ORS 308.210. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county position. Taxpayer must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).

The parties presented some evidence under the cost and sales comparison approaches. Accordingly, the court will consider those two approaches. Although the subject property was leased to a tenant farmer, neither party offered an income approach.

A.     *Cost Approach*

"In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structure from all causes." *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006) (quoting Appraisal Institute, *The Appraisal of Real Estate* 63 (12th ed 2001)). The cost approach is more useful in valuing new improvements, and "less useful where the evidence of cost is incomplete, distorted, or otherwise unreliable." *Id.*

Plaintiff presented no competent evidence of the subject property's land value. He referenced an assessed value from a different county, but that is not market-based evidence. Defendant provided four comparable land sales to support the subject property's land value. The land sales were of a similar size as the subject property and included soil classes ranging from 2 to 6. Thus, the sales are relevant even if the court were to accept Plaintiff's contention that the subject property's soil was class 3 or 4. The sales indicated a value range of $8,399 to $11,185

per acre. The tax roll value of the subject land was $9,286 per acre, which is supported by that range. The court accepts the tax roll land real market value of $394,650.

Plaintiff paid $191,370 to construct the subject house in 2021. That cost had increased to $222,995 as of 2025. The cost to construct the house is incomplete because it does not include site preparation costs, which may range from $10,000 to $50,000. Thus, the tax roll value of $270,820 for the house is supported, albeit on the high end of the range for site preparation costs.[3] Without additional evidence, the court finds no basis to adjust the tax roll value for the house. The cost approach supports the subject property's tax roll real market value.

B.      *Sales Comparison Approach*

"Under the sales comparison approach, the value of a property is derived by "comparing the subject property with similar properties, called comparable sales." *Magno*, 19 OTR at 58 (citing Appraisal Institute, *The Appraisal of Real Estate* 63 (12th ed 2001)). Plaintiff offered no evidence under the sales comparison approach. Defendant presented three comparable sales that supported the subject property's tax roll value. Those sales ranged from $810,000 to $875,000, compared to the tax roll value of $735,100. Plaintiff questioned – without evidence – whether those sales were comparable based on the buyers' motivations. Each sale was located within the EFU zone and comparable to the subject property with respect to the land size and improvements. The court finds that the sales comparison approach supports the subject property's tax roll real market value.

/ / /

/ / /

---

[3] Adding $222,995 for the 2025 base house cost to $50,000 for the high end of the range for site preparation costs yields a total value of $272,995.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff has failed to prove by a preponderance of the evidence that the subject property's 2024-25 tax roll real market value was overstated. Defendant presented competent evidence to support the roll value. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on July 22, 2025.*